# STATE OF VERMONT

# ENVIRONMENTAL COURT

Secretary, Vermont Agency of
Natural Resources, Plaintiff,　　　}
　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　}　Docket No. 85-5-97 Vtec
v　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　}
Richard F. Towns, Respondent.

## Decision and Order

In an earlier case involving this respondent, Docket No. 162-10-96 Vtec, this Court had ruled that Respondent had violated 10 V.S.A. ' 6605(a) and the Solid Waste Regulations from January 1, 1980 to June 28, 1987, and had remanded the remedial order to the Agency of Natural Resources. In response to that remand, in Docket No. 85-5-97 Vtec, on April 10, 1997, the Secretary of the Vermont Agency of Natural Resources (ANR) issued a second administrative order pursuant to 10 V.S.A. ' 8008 regarding Respondent, who again timely requested a hearing in Environmental Court. Docket No. 85-5-97 Vtec was put on hold until the Supreme Court appeal of Docket No. 162-10-96 Vtec was resolved and the remanded issue of the statute of limitations was also resolved in this court. In a related case in Washington Superior Court, Docket No. 233-4-00 Wncv, Respondent brought a declaratory judgment action against his homeowners= insurance carrier, Northern Security Insurance Company, regarding his coverage on the property involved in this matter.

The purchasers of the property, James and Christine Wilkens, intervened in Docket No. 85-5-97 Vtec to protect their interests, as the primary issue remaining in this matter is whether what is now their property should be dug up and to what condition it should be restored afterwards. They stated as their position that they have been unable to sell their property, due to the A fill@ deposited on their property by Mr. Towns prior to their purchase of it, and that:

2. It is the Wilkens= position that the materials placed on the land should be completely removed and replaced by clean and structurally sound (i.e. properly compacted) fill. They clearly do not want to have to bear any expense. As their driveway, well, cellar drainage, and septic system will be affected by the construction, they want to be sure those are replaced, in good, working order, after the work is done. They want only the trees that will be in the fill area to be taken down and a guarantee that the trees that are taken down or affected by the development to be replaced with trees of equal quality, size and age. They also have an above-ground swimming pool, which if it is removed they want replaced and in good working order or if reassembled then all work done by professionals with guarantees.

They want to ensure that accommodations are made for the Wilkens family as they will no doubt need to move off the property during construction.

3. The Wilkens want to be assured they have a continuing role in the work, so that they have an opportunity to approve the timing, duration and completion dates, plus authority to make claims for damage to their property (such as a cracked foundation) that occur subsequent to closure but require a few years to arise.

In the November 20, 2001 and January 4, 2002 entry orders, and several times in the pretrial conferences leading up to the hearing in this matter, the Court noted the possibility that some or all of the relief sought by the Wilkens was not necessarily available to them in this proceeding and

suggested in the pretrial conferences that they may need to file an action in Superior Court towards that end.

After Docket No. 162-10-96 Vtec was entirely concluded, a hearing was held on the merits of the present matter, at which Respondent was represented by John L. Franco, Esq., the Secretary was represented by Gary Kessler, Esq., and Intervenors Wilkens were represented by Paul S. Gillies, Esq.

The statutes, rules and permits applicable to this matter are 4 V.S.A. Chapter 27; The statutes, rules and permits applicable to this matter are 4 V.S.A. Chapter 27, 10 V.S.A. Chapter 159, and in particular ' 6605, 10 V.S.A. Chapter 201, and the Solid Waste Management Regulations (effective August 21, 1978). 10 V.S.A. ' 8012(c)(2).

Findings and Conclusions as to Violation (10 V.S.A. ' 8012(c)(1)):

The determination of whether a violation has occurred, 10 V.S.A. ' 8012(b)(1), was concluded in Docket No. 162-10-96 Vtec. The Court hereby incorporates the findings from Docket No. 162-10-96 Vtec.

Determination of Order and Penalty (10 V.S.A. ' 8012(c)(3)):

The Administrative Order contains no request for a penalty. 10 V.S.A. ' 8012(b)(4). Because the order is one issued under ' 8008(b)(5), which directed Respondent to take actions necessary to achieve compliance, to abate potential or existing environmental or health hazards, and to restore the environment to the condition existing before the violation, the Court may only determine whether to affirm the order as written, or to vacate and remand it to the secretary. Under 10 V.S.A. ' 8012(b)(2) the Court has no authority to modify the order.

The Administrative Order calls for a site investigation plan to be approved by the Agency, drafted by an independent consultant to be approved by the Agency, followed by a site remediation plan drafted by the consultant and approved by the Agency, followed by implementation of the site remediation by an independent contractor to be approved by the Agency.

Respondent would prefer for the remediation plan to be drafted by a consultant of his choosing, for it to include the possibility of leaving some or all of the materials in place and capping the site, and for the work to be done by Respondent himself (with the cost-savings due to the use of his own labor and equipment). Respondent would prefer for the order to contain some sort of reopener clause in the event that the investigation and remediation exceeds his financial resources, including insurance[1].

Intervenors= position requests restoration of the site to its present elevations with clean fill, and restoration of the septic system and swimming pool after the work is done. This relief goes beyond the scope of what can be ordered under the Uniform Environmental Enforcement Act, as it exceeds the restoration of the property to the condition existing as of January 1, 1980.

The procedure outlined in the Administrative Order is reasonably likely to achieve the intended result, and therefore the order is affirmed, rather than being reversed and remanded as it was in Docket No. 162-10-96 Vtec. However, the Court wishes to clarify what is and is not potentially possible under the order, based upon the confusion evident at the hearing on the merits of the order.

First of all, although the Agency may allow some or even most respondents to use a consultant of their own choice, it is not unreasonable for the Agency to require an independent consultant in

the present case. The choice of an independent consultant is reasonably likely to achieve the intended result of obtaining an objective assessment of the site and its remediation needs. It is within the scope of ' 8008(b)(5) for the Agency to require the investigation of the material disposed at the site to determine what was deposited as of and after January 1, 1980 and whether any of the earlier-deposited material (that is, not illegally deposited) nevertheless constitutes a potential or existing environmental or health hazard.

It is important to note that even though the Administrative Order uses the terms A illegally-deposited material@ or A illegally disposed@ waste, Paragraph B of the order allows the consultant both to determine whether any of the earlier-deposited material must nevertheless be removed to abate a potential or existing environmental or health hazard, and to determine whether any of the later- or illegally-deposited material may or should remain in place. It is necessary to read Paragraphs B and D of the order together, to understand that the consultant must draft and submit for Agency approval a site remediation plan that addresses the removal and proper disposal of all illegally-deposited material, but which could provide for any of that material to remain in place if suitable, including whether any environmental harm would be caused by its removal and whether any environmental harm would be prevented by capping the material.

We also must note that while Paragraph D requires the plan to > take into account= or address the structural integrity of the house and sewage disposal system, and any impacts on the occupants of the house, the Agency= s authority extends only to issuing an order to > restore the environment to the condition existing before the violation.= The condition existing before the violation was the partly-filled ravine or bank behind the house as it existed on January 1, 1980, with a wetland or ponded area in front of the house. If Intervenors have an independent right to have Respondent install clean fill to restore the ground surface and the septic system to the condition they were in (or the condition that Respondent represented to them the property was in) at the time they purchased it, that right is not enforceable by this Administrative Order or in this Court.

It may very well be most efficient for this investigation and remediation plan to be conducted in concert with any remedial plan to restore the Wilkens= property to whatever condition may be ordered in such a private lawsuit, but this Court cannot rule on the Wilkens= private rights vis-à-vis Respondent in this Administrative Order proceeding.

Two additional aspects of the Administrative Order could conceivably be changed without jeopardizing the intended result. While the Court cannot itself modify the order in this proceeding, Respondent is free to propose an amendment of this order at such later time as it may be appropriate. First, it may be reasonable, after the remediation plan has been prepared, but before the remediation work has begun, to determine whether Respondent= s lawsuit in Washington Superior Court, Docket No. 233-4-00 Wncv, has been resolved and whether Respondent has coverage for the remediation work. Second, it may be reasonable, after the remediation plan has been prepared, but before the remediation work has begun, for Respondent then to propose to perform the excavation and any capping or filling work required by the remediation plan himself or using his equipment, under the direction of the independent consultant. It is now premature to make that proposal, but if the parties should agree to it at a later date, they may move to amend this order or may enter into a future Assurance of Discontinuance altering the terms of the Administrative Order affirmed in this proceeding.

Rights of Appeal (10 V.S.A. ' 8012(c)(4) and (5)):

WARNING: this decision will become final if no appeal is requested within 10 days of receipt of this decision. Respondent and the Secretary of the Agency of Natural Resources have a right to appeal this decision. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to the exceptions in Vermont Rules of Civil Procedure

(V.R.C.P.) 76(a)(3) and (d)(5). Within 10 days of receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of this Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. ' 8013(d). A party may petition the Supreme Court for a stay under the provisions of V.R.C.P. 62 and V.R.A.P. 8.

Done at Barre, Vermont, this 30th day of December, 2002.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1.] In the <u>Towns v. Northern Security Ins. Co.</u> case, Docket No. 233-4-00 Wncv, the Washington Superior Court issued a decision and order on cross-motions for summary judgment on September 23, 2002, that the insurance company had a duty to defend Respondent, and that duty to indemnify could not be rejected on the basis of the facts so far developed in that case.